**Vern MASEPOHL, individually and on behalf of all other Minnesota residents similarly situated, Plaintiff,**

v.

**AMERICAN TOBACCO COMPANY, INC.; American Brands, Inc.; R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Batus, Inc.; Brown and Williamson Tobacco Corporation; Philip Morris, Inc.; Philip Morris Companies, Inc.; Lorillard Tobacco Company, Inc.; Lorillard,**

Inc.; Loews Corporation; United States Tobacco Company; UST, Inc.; The Tobacco Institute, Inc.; Council for Tobacco Research–USA, Inc.; Minter–Weisman Co.; The Pioneer Co., Inc.; and Segal Wholesale, Inc., Defendants.

Civ. No. 3–96–888.

United States District Court, D. Minnesota, Third Division.

Aug. 8, 1997.

Charles Selcer Zimmerman, Barry G. Reed, Zimmerman & Reed, Minneapolis, MN, for Vern Masepohl.

John Walter Getsinger, Byron E. Starns, Jr., Leonard Street & Deinard, Minneapolis, MN, James A. O'Neil, Jack Michael Fribley, Bridget M. Ahmann, Faegre & Benson, Minneapolis, MN, Mary T. Yelenick, Chadbourne & Parke, New York City, for American Tobacco Co., Inc.

James Stuart Simonson, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN, Hugh R. Whiting, Jones Day Reavis & Pogue, Cleveland, OH, Jerome R. Doak, Jones Day Reavis & Pogue, Dallas, TX, for R.J. Reynolds Tobacco Co.

Richard A. Schneider, King & Spalding, Atlanta, GA, for Batus, Inc.

Peter W. Sipkins, Robert A. Schwartzbauer, Paul James Robbennolt, Dorsey & Whitney, Minneapolis, MN, Jack Lipson, Arnold & Porter, Washington, DC, Craig E. Gustafson, John L. Sherk, III, Shook Hardy & Bacon, Kansas City, MO, Michael L. Zaleski, Quarles & Brady, Madison, WI, for Philip Morris, Inc.

Boyd H. Ratchye, David George Martin, Doherty Rumble & Butler, St. Paul, MN, for Lorillard Tobacco Co.

Richard Gary Mark, Briggs & Morgan, Minneapolis, MN, Micheal Robert Docherty, Howard Allen Roston, Docherty Rumble & Butler, St. Paul, MN, Arthur F. Fama, Jr., Skadden Arps Slate Meagher & Flom, L.L.P., New York City, for U.S. Tobacco Co.

George W. Flynn, Hal A. Shillingstad, Cosgrove Flynn & Gaskins, Minneapolis, MN, Bill Livingston, Columbus, OH, for Tobacco Insititute, Inc.

Robert Lawrence Purdy, Maslon Edleman Borman & Brand, Minneapolis, MN, Harry Zirlin, Debevoise & Plimpton, New York City, for Council for Tobacco Research.

David George Martin, Doherty Rumble & Butler, St. Paul, MN, Eldon J. Spencer, Jr., Leonard O'Brien Wilford Spencer & Gale, St. Paul, MN, for Minter–Weisman Co.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Plaintiff Vern Masepohl's motion to remand the instant action to state court. For the following reasons, the Court denies Plaintiff's motion.

## BACKGROUND

This matter is before the Court upon Plaintiff Vern Masepohl's motion to remand the instant action to state court. For the following reasons, the Court denies Plaintiff's motion.

On September 4, 1996, Plaintiff Vern Masepohl ("Masepohl"), a Minnesota resident, filed a complaint in the District Court for Ramsey County, Minnesota, on behalf of himself and all other Minnesota residents similarly situated. The Complaint named as defendants fourteen manufacturers ("Tobacco Companies") and three distributors of tobacco products, as well as two tobacco research and lobbying entities (collectively, "Defendants"). While none of the tobacco manufacturers or research organizations is a citizen of Minnesota, the three tobacco distributors (collectively, "Distributors" or "Minnesota Defendants") are Minnesota corporations.

Masepohl's Complaint contains two sets of allegations. First, he contends that the Defendants, over the course of several decades, have manufactured, promoted, and sold cigarettes to him and thousands of Minnesota residents while knowing, but denying and concealing, that such cigarettes contain the highly addictive drug nicotine. (*See* Compl. ¶¶ 1, 15–28.) Second, Masepohl alleges that the Defendants have, without public knowledge, controlled and manipulated the nicotine levels in cigarettes in order to create and sustain addictions to their products. (*See* Compl. ¶¶ 1, 29–36.) The specific counts of the Complaint are brought under Minnesota state law and include fraud and deceit, negligent misrepresentation, intentional infliction of emotional distress, negligence/negligent infliction of emotional distress, breach of express warranty, breach of implied warranty, strict products liability, consumer fraud, conspiracy, and a request for equitable relief.

On September 20, 1996, the Defendants removed the instant action to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §§ 1441(a) and 1446. Despite the lack of complete diversity among the parties, the Defendants contend that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. In support of removal, the Defendants allege that Masepohl fraudulently joined the three Minnesota Defendants in order to defeat diversity. Masepohl moves to remand, maintaining that he has alleged colorable claims against the Distributors.

In support of these claims, Masepohl alleges that the Distributors have successfully marketed, distributed, and sold cigarettes to residents of Minnesota and thus are an integral part of the chain of distribution of cigarettes. (*See* Mem. Supp. Pl.'s Mot. to Remand at 4; Pl.'s Reply Mem. Supp. Mot. to

Remand at 2.) Furthermore, Masepohl believes, based on news reports and additional investigation, that the Distributors receive money from the Tobacco Companies through various distributor/wholesaler associations and use those payments to aggressively promote, advertise, distribute, and sell tobacco products. (*See* Mem. Supp. Pl.'s Mot. to Remand at 4.)

The Defendants dispute Masepohl's factual assertions. Citing to affidavits of the Distributors' officers, the Defendants describe the Distributors as wholesale distributors of cigarettes, candy, and other products. (*See* Mem. Opp'n Pl.'s Mot. to Remand at 4.) They have no retail outlets and do not sell cigarettes directly to consumers. (*See id.*) The Distributors sell cigarettes to retailers in presealed, prelabeled containers without altering the contents or labels, except to attach tax stamps. (*See* id.) The Distributors' officers assert that their companies have no role in the design, manufacture, packaging, labeling, or advertising of cigarettes, nor have they held themselves out as playing such a role. (*See id.* at 5.) The Distributors deny ever making any public statements about nicotine addiction or manipulation or other issues concerning smoking and health. (*See id.*) They also claim that they have never possessed information relating to such issues, other than that information commonly known by the public. (*See id.*) The Distributors are not members of the Tobacco Institute, the Council for Tobacco Research–U.S.A., Inc., or any similar organization. (*See id.*) The Court will consider the facts and allegations set forth by all parties in evaluating Masepohl's motion to remand.

## DISCUSSION

Masepohl moves to remand the instant action based on a lack of diversity jurisdiction. The Defendants allege that Masepohl fraudulently joined the Distributors in order to destroy diversity jurisdiction and encourage the Court to find that removal was appropriate.

## I. Statement of the Law Governing Fraudulent Joinder

■ Federal district courts have original jurisdiction over all civil actions between citizens of different states in which the amount in controversy exceeds $50,000.[1] *See* 28 U.S.C. § 1332(a). Diversity must be complete, so that no plaintiff is a citizen of the same state as any defendant. *See Green v. Lake of the Woods County,* 815 F.Supp. 305, 306 (D.Minn.1993) (citations omitted). Defendants may remove diversity cases to federal court, but only if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). If at any time before final judgment is entered the district court determines that it lacks subject matter jurisdiction over the case before it, the court must remand the action to state court. *See* 28 U.S.C. § 1447(c). In reviewing a motion to remand, the district court must strictly construe the removal statute against the party seeking removal and resolve all doubts as to the propriety of federal jurisdiction in favor of state court jurisdiction. See *In re Potash Antitrust Litig.,* 866 F.Supp. 406, 410 (D.Minn.1994); *accord Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

■ The Court may consider Masepohl's initial Complaint only, not the First Amended Complaint, in ruling on this motion. Courts must evaluate the propriety of removal by looking to the record as it stands at the time that the removal petition is filed. *See Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939); *Hatridge v. Aetna Cas. & Sur. Co.,* 415 F.2d 809, 814 (8th Cir.1969); *Butts v. Hansen,* 650 F.Supp. 996, 998 (D.Minn.1987). Subsequent amendment of a complaint cannot defeat removal. *See Pullman Co.,* 305 U.S. at 537, 59 S.Ct. at 348–49 ("The second amended complaint should not have been considered in determining the right to remove, which ... was to be determined according to the plaintiffs' pleading at the time

1. The Federal Courts Improvement Act of 1996 raised the amount in controversy requirement from $50,000 to $75,000. This revision does not apply to the instant case, which was filed before the change went into effect.

of the petition for removal.") (citations omitted). For purposes of the motion to remand, the Court must resolve in Masepohl's favor all disputed issues of fact and any uncertainties as to the controlling substantive law. *See Schwenn v. Sears, Roebuck & Co.*, 822 F.Supp. 1453, 1455 (D.Minn.1993); *Banbury v. Omnitrition Int'l, Inc.*, 818 F.Supp. 276, 280 (D.Minn.1993). The Court may pierce the pleadings to consider factual and legal materials beyond the allegations of the Complaint, but only to determine if there is any factual support for Masepohl's claims against the Distributors. *See Banbury*, 818 F.Supp. at 280.

█ Because Masepohl and the Distributors are all Minnesota citizens, this action is not removable on its face. The Defendants contend, however, that Masepohl joined the Distributors solely to defeat this Court's diversity jurisdiction and, therefore, this case was properly removed pursuant to the doctrine of fraudulent joinder. Joinder of in-state defendants is fraudulent " 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.' " *Banbury*, 818 F.Supp. at 280 (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)); *accord Schwenn*, 822 F.Supp. at 1455. Therefore, "fraudulent joinder exists if, whatever the plaintiffs' motive, their claim against an in-state defendant has no chance of success." *Schwenn*, 822 F.Supp. at 1455 (citation omitted). The Court must remand this action to state court if "there is even a possibility" that Masepohl has stated a colorable cause of action against any of the Distributors. *See Banbury*, 818 F.Supp. at 280 (quoting *Boyer*, 913 F.2d at 111). Thus, the Defendants must demonstrate to this Court that there is no possibility that Masepohl has stated a colorable claim against any of the Distributors. The Defendants have met this burden.

## II. Plaintiff Masepohl's Causes of Action Against the Distributors

█ Masepohl has alleged nine separate state law claims and a claim for equitable relief against the Defendants, including the Distributors. According to Masepohl, each of his claims is colorable under Minnesota law as to each Distributor. The Defendants, in response, contend that Masepohl has no possibility of a right to recover against the Distributors on any claim. The Court will consider each claim in turn.

### A. *Fraud and Deceit*

█ Masepohl premises his fraud claim on the Distributors' failure to "inform or warn" him and the members of the class of the addictive nature of nicotine. (*See* Compl. ¶ 58.) In order to successfully demonstrate fraud under Minnesota law, a plaintiff must prove that: (1) the defendant made a false representation about a past or present fact; (2) the false representation was material and susceptible of knowledge; (3) the defendant knew the representation was false or made the representation without knowing whether it was true or false; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; and (6) the plaintiff suffered damages due to the representation. *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn.1992).

█ Masepohl concedes that the Distributors have not made any active representations or misrepresentations concerning nicotine addiction, nicotine manipulation by the Tobacco Companies, or smoking and health generally. (*See* Pl.'s Reply Mem. Supp. Mot. to Remand at 5.) Rather, Masepohl contends that "the Minnesota Defendants were parties to fraud by acting to conceal or remain silent about the true nature of nicotine while at the same time acting to aggressively distribute and sell cigarettes and implementing techniques designed to increase tobacco use by adults and children." (*See id.*) As Masepohl acknowledges, a failure to disclose a material fact constitutes fraud only when the party accused of concealment was under a legal or ethical obligation to disclose that fact. *See American Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1486 (D.Minn.1991), *aff'd*, 967 F.2d 1208 (8th Cir.), *cert. denied*, 506 U.S. 956, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992). The obligation to disclose arises "(1) where one party owes a

fiduciary duty to the other; or (2) where the circumstances are such that failure to disclose renders misleading statements which have already been made." *Id.*

Nowhere does Masepohl allege that any of the Distributors owe a fiduciary duty to him or any other class member. Moreover, the Distributors have not made *any* statements about the addictive nature of nicotine; therefore, their silence could not render those nonexistent statements misleading. Any failure by the Distributors to inform Masepohl of nicotine's addictive properties, even if the Distributors possessed such knowledge to a greater degree than the general public, is not actionable because the Distributors are under no obligation to disclose. Accordingly, Masepohl has not presented the possibility of a colorable claim against the Distributors as to the fraud and deceit claim contained in his Complaint.

### B. *Negligent Misrepresentation*

A plaintiff has alleged a claim of negligent misrepresentation when he has asserted that: (1) the defendant owes him a duty of care in obtaining or communicating information; (2) the defendant supplied false information in breach of that duty of care; (3) the plaintiff justifiably relied on the false information; and (4) the plaintiff was damaged as a result. See *Caritas Family Servs.,* 488 N.W.2d at 287; *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 298–99 (1976). In his negligent misrepresentation claim, Masepohl appears to contend that the Distributors breached their duty of care to him and the other class members by negligently failing to warn them of nicotine's addictive properties. (*See id.* ¶¶ 62–63.)

Masepohl provides the Court with no support, factual or otherwise, for his contention that the Distributors owed him a duty of care. He alleges only that the Distributors "owed a duty of care to members of the class to be truthful and accurate in their representations regarding cigarettes." (Pl.'s Mem. Supp. Mot. to Remand at 10). Again, the Distributors have made no representations at all, so they could not have made untruthful or inaccurate representations. Moreover, as discussed above, the Distributors do not owe Masepohl a duty to

disclose any information about cigarettes or the effects of nicotine. *See supra,* Part II.A. Accordingly, there is no possibility that Masepohl has raised a colorable claim for negligent misrepresentation.

### C. *Intentional Infliction of Emotional Distress*

Masepohl included in his Complaint a claim for intentional infliction of emotional distress directed generally at "the Defendants" as well as at the Tobacco Companies, but he makes no attempt in either of his memoranda of law to argue that this claim is colorable as to the Distributors. To succeed on his claim of intentional infliction of emotional distress, Masepohl must prove that: (1) the Distributors' conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. See *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). The conduct alleged must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community," and the distress inflicted must be so severe that "no reasonable man could be expected to endure it." *Id.* at 439.

At best, Masepohl alleges that the Distributors acted in an extreme and outrageous manner toward him and the other members of the class by remaining silent about the addictive properties of nicotine. (*See* Compl. ¶ 67.) Under no set of facts could this conduct, if true, be construed as extreme or outrageous or "so atrocious that it passes the boundaries of decency...." *Hubbard,* 330 N.W.2d at 439. Masepohl has failed to assert a colorable claim against the Distributors for intentional infliction of emotional distress.

### D. *Negligence and Negligent Infliction of Emotional Distress*

Masepohl alleges claims of negligence and negligent infliction of emotional distress. As with his intentional infliction claim, Masepohl does not address these negligence claims in his memoranda of law.

A person may recover damages for negligent infliction of emotional distress if he: "(1) was within a zone of danger of physical impact; (2) reasonably feared for his own safety; and (3) suffered severe emotional distress with attendant physical manifestations." *K.A.C. v. Benson,* 527 N.W.2d 553, 557 (Minn.1995). Whether the plaintiff was in a zone of danger is an objective question. *See id.* at 558. The Minnesota Supreme Court has determined that actual physical impact is not a required element of a claim for emotional distress. *See id.* at 557–58.

The Court first adopted the zone of danger test in *Purcell v. St. Paul City Railway Co.,* in which a woman suffered a miscarriage after a narrowly avoided cable car accident. 48 Minn. 134, 50 N.W. 1034 (1892). In finding for the plaintiff, the Court noted that the impending cable car collision "seemed so imminent, and was so nearly caused, that the incident and attending confusion of ringing alarm-bells and passengers rushing out of the car caused to plaintiff sudden fright and reasonable fear of immediate death or great bodily injury." *Id.; see also Okrina v. Midwestern Corp.,* 282 Minn. 400, 165 N.W.2d 259, 261 (1969) (finding woman who, while in a department store dressing room, heard a noise like an explosion and witnessed the collapse of a wall, although she herself merely got dusty, to be within a zone of danger); *Quill v. Trans World Airlines, Inc.,* 361 N.W.2d 438, 440 (Minn.Ct.App.1985) (determining that man who experienced a sudden 34,000–foot drop in elevation due to the out-of-control tailspin of the commercial aircraft in which he was a passenger was within a zone of danger).

Masepohl has not alleged a single incident that could even remotely be construed as placing him in a zone of danger. The doctrine of negligent infliction of emotional distress simply does not cover the type of conduct that Masepohl asserts. *Cf. K.A.C.,* 527 N.W.2d at 558 (holding that defendant must have placed plaintiff in "a situation where it was abundantly clear that plaintiff was in grave personal peril for some specifically defined period of time" for negligent infliction claim to be actionable).

As for Masepohl's negligence claim, Masepohl claims that the Defendants had a duty to warn him and the other class members of the addictive nature of nicotine and that their breach of that duty constituted negligence. (See Compl. ¶¶ 71, 73.) As the Court determined above, *see supra,* Part II.B, Masepohl has alleged no facts from which the Court could possibly find that the Distributors owned him a duty of reasonable care. Masepohl has failed to state the possibility of a colorable claim for negligence or negligent misrepresentation.

### E. Breach of Express Warranty

Masepohl asserts a claim of breach for express warranty in the fifth claim of his Complaint, contending that "the Defendants"' advertisements and promotional statements contained broad claims amounting to a warranty that the Tobacco Companies' cigarettes were not addictive, that the Tobacco Companies did not manipulate the nicotine levels in their cigarettes, and that the Tobacco Companies did not intend to addict or maintain the additions of Masepohl and other class members. (*See* Compl. ¶ 75.) Under Minnesota law, an express warranty is

a written statement arising out of a consumer sale pursuant to which the manufacturer, distributor, or retailer undertakes (1) to preserve or maintain the utility or performance of the goods or provide compensation or replacement if there is a failure in utility or performance.... It is not necessary ... that formal words such as "warrant" or "guarantee" be used or that a specific intention to make a warranty be present, but an affirmation merely of the value of the goods or a statement purporting to be merely an opinion or commendation of the goods does not create a warranty.

Minn.Stat. § 325G.17, subd. 5. The Court cannot discern anything that the Distributors possibly could have done to create an express warranty with Masepohl and other members of the class.

Masepohl claims that "the Defendants," generally, created an express warranty through the "broad claims" contained in their advertisement and promotions. While advertising and other descriptions of a product by a seller can, in some circumstances, create an express warranty, *see Federal Reserve Bank*

*v. Carey Canada, Inc.,* Civ. No. 3–86–185, 1988 WL 220489, at *4 (D.Minn. Aug.31, 1988), such is not the case here. The advertisements that have been found to constitute express warranties contain very specific claims and promises as to how a certain product will perform. *See, e.g., Baumgartner v. Glesener,* 171 Minn. 289, 214 N.W. 27, 28 (1927) (holding that advertisement claiming that seed would germinate at rate of ninety-five percent constituted an express warranty). A claim that cigarettes are not addictive, even if actually made by the Distributors in advertisements or promotions, does not rise to the level of specificity required by Minnesota law or constitute a statement meant "to preserve or maintain the utility or performance of the goods or provide compensation or replacement if there is a failure in utility or performance." Minn. Stat. § 325G.17, subd. 5. Masepohl has not alleged a colorable claim of breach of express warranty against the Distributors.

### F. *Breach of Implied Warranty*

In his sixth claim for relief, Masepohl alleges that the Defendants "impliedly warranted that their cigarettes, which they designed, manufactured, distributed, and sold to the Plaintiff and members of the Class, were merchantable for their ordinary use [and] that the nicotine in the cigarettes was not addictive...." (Compl.¶ 79.) Masepohl further alleges that the Defendants breached their implied warranty of merchantability by selling to him and members of the Class cigarettes that were addictive, unmerchantable, and unfit for their ordinary purposes. (*See* Compl. ¶ 80.)

 Minnesota law provides that "[u]nless excluded or modified ..., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Minn.Stat. § 336.2–314(1). To prevail on an implied warranty claim, a plaintiff must prove (1) the existence of a warranty; (2) a breach; and (3) a causal link between the breach and the alleged harm. *See Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 730 (Minn.1990). The Defendants do not dispute that the Distributors are merchants of cigarettes for the purposes of an implied warranty analysis. Rather, the Court be-

lieves the Defendants' argument to be that no warranty exists between Masepohl and the Distributors, nor could one exist, because the Distributors merely purchase cigarettes from their suppliers in presealed and prelabeled containers and then distribute the cigarettes, unaltered, to retailers. (*See, e.g.,* Mem. Opp'n Pl.'s Mot. to Remand at 17.)

 The Court could find no instance under Minnesota law in which an implied warranty was found to exist between a distributor or wholesaler who distributed goods to retailers without altering them in any way and the ultimate purchaser. *Compare Schweich,* 463 N.W.2d at 725 (implied warranty found between distributor of Caterpillar tractor and ultimate purchaser where distributor made significant modifications to tractor before sending it to retailer), *with Ryan Dev., Inc. v. Enerson Elec. Co.,* No. C6–90–1266, 1991 WL 15416 (Minn.Ct.App. Feb.12, 1991) (no implied warranty found between distributor of heating units and ultimate purchaser where there was no evidence that distributor altered the product in any way). Therefore, no implied warranty can exist between Masepohl and the Distributors, and Masepohl cannot assert a claim for breach of implied warranty against the Distributors.

 Moreover, "[s]trict products liability has effectively preempted implied warranty claims where personal injury is involved." *Nimeth v. Prest Equip. Co.,* No. C1–93–685, 1993 WL 328767, at *1 (Minn.Ct. App. Aug.31, 1993) (citing *Continental Ins. Co. v. Loctite Corp.,* 352 N.W.2d 460, 462 (Minn.Ct.App.1984); *Goblirsch v. Western Land Roller Co.,* 310 Minn. 471, 246 N.W.2d 687, 690 (1976)). Because Masepohl's Complaint asserts personal injuries to himself and other members of the class, his implied warranty claim is preempted by his strict products liability claim. Masepohl has failed to allege a colorable claim for breach of implied warranty against the Distributors.

### G. *Strict Products Liability*

In his seventh claim, Masepohl alleges that the Distributors can and should be held strictly liable in tort for selling defective products—the Tobacco Companies' addictive

cigarettes. (See Compl. ¶ 88; see also Pl.'s Mem. Supp. Mot. to Remand at 12.) Minnesota law prohibits strict products liability actions against nonmanufacturers unless one of three statutory exemptions applies. See Minn.Stat. § 544.41. A plaintiff may recover against a nonmanufacturer if he can demonstrate:

(a) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;

(b) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or

(c) That the defendant created the defect in the product which caused the injury, death or defect.

Minn.Stat. § 544.41, subd. 3. Masepohl does not argue that the Distributors created any defects in the tobacco products they distributed. Rather, Masepohl contends that the Distributors are not the "passive middlemen" that section 544.41 excludes from liability and that they had knowledge of the alleged defects. The Defendants dispute both of Masepohl's allegations.

■ Masepohl argues that the Distributors fall under the "nonpassive middleman" exception of section 544.41 because their relationship with the Tobacco Companies moves beyond that of a mere conduit into active involvement with the Tobacco Companies' overall producing and marketing complex. In support of this argument, Masepohl contends that the Distributors aggressively promoted and sold cigarettes to adults and children and received money from the Tobacco Companies through various wholesaler/distributor associations to promote and lobby on behalf of tobacco products. (See Pl.'s Mem. Supp. Mot. to Remand at 4, 13.) Even if Masepohl's factual claims are true, such actions by the Distributors cannot create strict liability under section 544.41. The type of promotion described by Masepohl does not constitute "significant control over the design or manufacture of the product" as required by section 544.41, subdivision 3. See Gorath v. Rockwell Int'l. Inc., 441 N.W.2d 128, 132 (Minn.Ct.App.1989) (defining a non-

passive middleman as one who had "some involvement with the condition of the product"). Masepohl does not dispute that none of the Distributors manufactured, produced, or designed any cigarettes or inspected the cigarettes prior to sale. The Distributors merely receive cigarettes from the Tobacco Companies and distribute them, unopened and unaltered, to retailers and thus epitomize the passive middleman as defined by section 544.41. Masepohl has failed to establish the possibility of a colorable strict products liability claim against the Distributors. Remand is inappropriate.

### H. Consumer Fraud

The only possible reference to the Distributors contained in Masepohl's consumer fraud claim alleges that "[t]he Defendants' concealment of nicotine's addictive nature constitutes violations of state common and statutory law regarding acts of consumer and other fraud...." (Compl.¶ 90.) Despite the fact that Masepohl does not include an allegation of false advertising as part of his consumer fraud claim against the Distributors, Masepohl relies most heavily upon Minnesota's false advertising statute when discussing the Distributors' alleged consumer fraud in his memoranda of law. That statute prohibits any person, firm, corporation, or association who, with the intent to sell merchandise to the public, advertises such merchandise from including in its advertising any material assertion, representation, or statement of fact that is untrue, deceptive, or misleading. See Minn.Stat. § 325F.67.

■ The false advertising statute and the other consumer fraud statutes to which Masepohl cites do not create a duty to disclose information, even according to Masepohl's own characterization. (See Pl.'s Mem. Supp. Mot. to Remand at 15.) Rather, they require companies that present advertising to the public to ensure that such advertising does not contain false, deceptive, or misleading information. See, e.g., Minn.Stat. § 325F.67. While Masepohl claims in his initial memorandum of law that the Distributors engaged in "misleading and deceptive advertising campaigns [that] minimize the risks [of cigarettes] and conceal the truth," (Pl.s Mem.

Supp. Mot. to Remand at 15), he includes no such allegations in the consumer fraud portion of his Complaint. (*See* Compl. ¶¶ 89–91.) Instead, the Complaint alleges only that the Defendants "conceal[ed] ... nicotine's addictive nature." (*Id.* ¶ 90.) Such concealment, even if true, is not actionable under Minnesota's consumer fraud statutes.

### I. *Conspiracy*

Masepohl's ninth and final claim is one for civil conspiracy. Despite Masepohl's protestations to the contrary, (*see* Pl.'s Mem. Supp. Mot. to Remand at 16–17; Pl.'s Reply Mem. Supp. Mot. to Remand at 10), it is clear from the face of the Complaint that this claim is not directed at the Distributors and thus does not allege a colorable claim against them. For Masepohl to claim otherwise at this juncture is disingenuous.

In his Complaint, Masepohl contends that since at least 1954, the tobacco research institutions and the Tobacco Companies "have agreed to cooperate with each other to suppress scientific information regarding the dangers of cigarette smoking and to publish information suggesting that cigarette smoking is not unduly hazardous." (Compl. ¶ 93.) Masepohl also alleges that "[r]ather than publicly reveal information concerning nicotine's addictiveness and the Tobacco Companies' control of nicotine ... the Tobacco Companies conspired with each other and with the Tobacco Institute and Council for Tobacco Research to suppress this information." (*Id.* ¶ 95.) These allegations clearly do not anticipate the inclusion of the Distributors in the conspiracy.

This conclusion is further supported by the section of the Complaint that identifies each Defendant. After naming each Tobacco Company and each tobacco research institution, the Complaint provides that "[t]he Tobacco Companies, The Tobacco Institute, Inc., and the Counsel for Tobacco Research—U.S.A., Inc. are sometimes referred to herein collectively as 'Manufacturer Defendants' or the 'Tobacco Industry'." (Compl. ¶ 5 at 6.) This definition does not include the Distributors. Next, the Complaint states that "[e]ach Manufacturer Defendant is also sued as a co-conspirator...." (Id.) The descriptions of the Distributors are listed after the other defendants and do not

include the co-conspirator reference quoted above. Therefore, it is abundantly clear to the Court that at the time Masepohl's Complaint was drafted, no conspiracy claim was alleged against the Distributors.

▬▬▬ Even if Masepohl had included the Distributors in his conspiracy claim, however, he has not alleged facts sufficient to assert a colorable claim of conspiracy. Masepohl argues that the Distributors' role in placing cigarettes in the chain of distribution validates his conspiracy claim against them. (*See* Pl.'s Mem. Supp. Mot. to Remand at 16.) To prove a conspiracy under Minnesota law, a plaintiff must present facts to demonstrate an agreement to accomplish an unlawful purpose as well as concerted action to achieve that purpose. *See Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir.1993), *cert. denied*, 510 U.S. 1113, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The Distributors' act of placing cigarettes in the chain of distribution cannot possibly be part of an alleged agreement to "suppress scientific information regarding the dangers of cigarette smoking and to publish information suggesting that cigarette smoking is not unduly hazardous." (Compl.¶ 93.) Because this agreement is the only one alleged in the Complaint, the Distributors' actions as described by Masepohl are insufficient to include the Distributors in the alleged conspiracy.

Finally, the Court has already determined that any failure to disclose information about the addictive properties of nicotine by the Distributors is not actionable. Masepohl has not pled a colorable conspiracy claim against the Distributors.

### III. Preemption and Statutes of Limitations

In addition to challenging Masepohl's claims against the Distributors substantively, the Defendants contend that Masepohl has no possibility of recovery on his fraud, negligent misrepresentation, negligence, strict liability, consumer fraud, and conspiracy claims because those claims are preempted by the Federal Cigarette Labeling and Advertising Act of 1965, 15 U.S.C. §§ 1331–40, and thus do not constitute colorable state causes of action. The Defendants also maintain that

Masepohl's claims against the Distributors are time-barred because Masepohl did not file his Complaint until more than two years after Minnesota's applicable statute of limitations had expired. *See* Minn.Stat. § 541.05. Because the Court has already determined that Masepohl has failed to assert claims against the Distributors that are colorable in state law, the Court declines to address the Defendants' preemption and statute of limitations arguments.

## IV. Costs and Attorneys' Fees

Masepohl requests an award of costs and attorneys' fees incurred in connection with the Defendants' removal of this action. The Court has discretion under 28 U.S.C. § 1447(c) to award to Masepohl "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The propriety of the defendant's removal should be the focus of a decision regarding whether to impose fees. *See Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993). Because the Court finds that removal was appropriate in this case, Masepohl is not entitled to costs and attorneys' fees.

## CONCLUSION

In response to Plaintiff Vern Masepohl's motion to remand, the Defendants have alleged that the Distributors were fraudulently joined to defeat diversity. The Defendants have successfully satisfied the burden of demonstrating that there is no possibility that Masepohl can state a colorable claim against the Distributors.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff Vern Masepohl's Motion to Remand (Clerk Doc. No. 6) is DENIED; and

2. Plaintiffs' request for payment of costs and attorneys' fees is DENIED.